UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

USA,

        Plaintiff,

   v.

CLIFFORD D. BERCOVICH,

        Defendant.

Case No. 13-cr-00662-RS-1

**ORDER DENYING MOTION TO SEVER**

## I. INTRODUCTION

Defendant Bercovich moves to sever his trial from that of his co-defendant, Webber. Bercovich argues that he and Webber will present antagonistic defenses at trial and that permitting them to be tried together carries a high risk of prejudice. He also argues the government may be able to admit damaging testimony in a joint trial that would be inadmissible against Bercovich in a separate trial. Bercovich and Webber's defenses, however, are not mutually exclusive. Moreover, the jury will be properly instructed if any of Webber's post-arrest statements are admitted into evidence at trial. Bercovich's motion is thus denied.

## II. BACKGROUND

The government alleges that, in or about June 2010, Bercovich and Webber conspired to prepare fraudulent federal income tax returns on behalf of prison inmates. As part of the scheme, Bercovich created an information sheet, on the letterhead of an entity called "Inmate Assets Recovery and Liquidation Services" (IARLS), which Webber, who was incarcerated, used to solicit personal identifying information from inmates, including social security numbers, names, addresses, and dates of birth. Defendants also recruited other inmates to assist in soliciting information and completing the sheets. Bercovich then used the information from those sheets to

prepare and file false tax returns. The tax returns reported fictitious wages, salaries, and tips that fraudulently inflated the Earned Income Credit and Making Work Pay Credit claimed. Bercovich opened P.O. Box 603 in Kentfield, California, and listed himself and Webber as the sole authorized users of the box. He reported P.O. Box 603 as the applicants' address on the false returns, so the tax refunds generated by the returns were mailed to that box. Bercovich also opened a Wells Fargo bank account in the name of IARLS, where he deposited some of the refunds from the false returns. After depositing the refunds, Bercovich and Webber split the IARLS fee of $250 or 25% of the refund for each return. The remainder was transmitted to the applicants. Bercovich and Webber are charged with conspiracy, as well as mail fraud and aggravated identity theft, in part as to different returns. They are scheduled for a joint trial beginning on January 9, 2017.

In various court filings, Mr. Webber has made statements relating to his anticipated defense. *See, e.g.*, Dkt. No. 77 at 1 ("Webber is a victim of Bercovich . . . Bercovich may have not been a licensed R.E. Broker or attorney as he constantly said. . . . Webber had every belief he was dealing with legal companies."); Dkt. No. 82 ("I could not of know what IARLS LLC [] was doing . . . I never filled out or owned programs to fill out returns. Bercovich sent information I deemed reliable from the IRS."); Dkt. No. 172 at 3 ("To the extent any actual fraud occurred in connection with the IRS, either through false tax refund claims or mishandling of refund checks, the alleged fraud at issue in this case belongs to Mr. Bercovich, rather than to Mr. Webber.").

Webber has also made post-arrest statements regarding other crimes he avers Bercovich committed. *See, e.g.*, Dkt. 75 (stating that Bercovich and another individual "made false statements to investigators"). In addition, Webber has made some statements about his role in the offense. *See, e.g.*, Dkt. 136 at 1-2 ("I am considering a plea on my case. . . . My part in this case is limited and very clear. The loss is not greater than $15,000 and my gain was $1,200, which is in the documents provided by the U.S. Attorney's Office[.]").

### III. LEGAL STANDARD

Criminal defendants may be tried together pursuant to Rule 8(b) of the Federal Rules of Criminal Procedure. That rule provides that "[t]wo or more defendants may be charged in the

same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Fed. R. Crim. Proc. 8.  Yet, even if criminal defendants are properly joined under Rule 8(b), such joinder may improperly prejudice one or all of the defendants.  *Zafiro v. United States*, 506 U.S. 534 (1993).  Thus, Rule 14(a) provides: "If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."  Fed. R. Crim. Proc. 14.

"A district court should grant severance under Rule 14 only if there is a serious risk that a joint trial would prejudice a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  *Zafiro*, 506 U.S. at 539.  When bringing a motion to sever, the moving party bears the burden of proving that a joint trial is so manifestly prejudicial that it violates the movant's right to a fair trial.  *United States v. Mitchell*, 502 F.3d 931, 963 (9th Cir.2007).  In evaluating the prejudicial effect of a joint trial, a court should review the specific and practical factors of each case that create a risk of severe prejudice.  For example, a defendant might suffer prejudice if the prosecution is able to admit evidence in a joint trial that would be inadmissible against that defendant in a separate trial.  *Id*.  Additionally, courts have widely recognized that severe prejudice may result when joined defendants are asserting "mutually antagonistic" defenses.  *Id*.  The degree of prejudice inflicted by joinder is a question that a district court must evaluate holistically.  *Zafiro*, 506 U.S. at 539.  That determination, as well as the ultimate question of severance under Rule 14, are within the discretion of the court.  *Id.*

Here, Bercovich argues that severance is necessary because (1) he and Webber will present mutually antagonistic defenses; and (2) Webber's post-arrest statements, if admitted, will undermine Bercovich's defense at trial.

## IV. DISCUSSION

**A. Mutually Antagonistic Defenses**

The Ninth Circuit has held that severance of a joint trial may be necessary where the codefendants present mutually exclusive theories of defense.  *United States v. Tootick*, 952 F.2d

1078, 1081 (9th Cir. 1991). Mutually exclusive defenses are typically defined as theories of defense that logically require the acquittal of one defendant, if the other defendant is convicted. *Id*. In *Tootick*, the Ninth Circuit addressed a stabbing that took place in an isolated area. *Id.* at 1080. Three men—Moses Tootick, Charles Frank, and Aaron Hart—drove to a secluded hill, where Hart was stabbed. *Id*. Hart testified that Frank stabbed him. *Id*. Frank testified that Tootick stabbed Hart. *Id*. at 1081. Tootick did not testify, but presented argument that at the time of the stabbing he was intoxicated in the backseat of the truck. *Id.*

The Ninth Circuit explained that Tootick and Frank's theories of defense were "mutually exclusive" because "there was no suggestion that Hart injured himself" or any evidence of a third-party's involvement. *Id.* Therefore, "the jury could not acquit Tootick without disbelieving Frank." *Id.* As a result of these mutually exclusive defenses, the court found that Tootick and Frank had been severely prejudiced by their joint trial, and that the trial court failed to provide sufficient instruction to cure that prejudice. *Id.* at 1083.

The facts of this case are different. While each defendant plans to blame the other, the jury is not required to choose between convicting one or the other defendant. Bercovich contends that the primary decision to be made by the jury is "who is responsible for the false information." Reply at 4. He insists that the jury will have to decide whether it was Webber, who was the primary contact with the tax refund applicants or Bercovich, who prepared the returns. The government, however, accuses Webber of collecting applicants' personal identifying information and Bercovich of entering the fictitious wages, salaries, and tips that fraudulently inflated the Earned Income Credit and Making Work Pay Credit claimed on the tax returns. *See* Superseding Indictment ¶¶ 11-12. This case is thus different from *Tootick*. There, the government accused both individuals of stabbing the victim, and each defendant accused his co-defendant of doing it. Each defendant had two lawyers in court accusing him of the same crime.

Here, Bercovich and Webber are charged with conduct that allegedly occurred at different points in time: first one collected personal information and then the other entered false financial information. Whether Webber thought that IARLS was a legal company when he collected the inmates' personal information does not necessarily make it any more or less likely that Bercovich

ORDER RE: MOTION TO SEVER
CASE NO. 13-cr-00662-RS-1

knowingly entered false financial information on the returns he prepared.  Indeed, Webber suggests his intent to present a defense that he had no experience in tax preparation.  A jury could find that Webber acted through mistake and negligence but without an intent to deceive and thus could "acquit [Webber] without disbelieving [Bercovich]." *Tootick*, 952 F.2d at 1081; *see also United States v. Heine*, No. 15-cr-00238, 2016 WL 1048895 (D. Oregon March 14, 2016) (finding severance was not required where co-defendants were charged with conspiracy to commit bank fraud and one defendant intended to show she lacked intent to deceive).

Moreover, the government alleges that Webber and Bercovich often acted in concert with other unnamed individuals in the prison.  In *Tootick*, there was no evidence to support a finding that someone other than the two defendants was responsible for the crime.  Here, the jury in the joint trial of Webber and Bercovich will have some flexibility to find that someone other than Webber and Bercovich is at least partly responsible for the crimes alleged.

Additionally, to the extent that Webber and Bercovich will present conflicting defenses, any resulting prejudice can be mitigated by appropriate instructions to the jury.  Even in *Tootick*, the Ninth Circuit recognized that severance would not have been required had the court provided the jury with appropriate cautionary instructions.  952 F.2d at 1083.  Any possible prejudicial effect of this joined trial can be limited through the use of appropriate jury instructions.

### B. Admission of Prejudicial Evidence

Bercovich argues that severance is proper because a joint trial could result in the admission of damaging testimony that would be inadmissible if Webber were tried separately.  Primarily, Bercovich points to Webber's statements about his interest in pleading guilty and the proper loss calculations for his crimes.  Bercovich argues that "this evidence would be highly prejudicial to [his case] (because Mr. Bercovich's co-defendant and alleged co-conspirator essentially confessed to the charged conduct)."  Reply at 4.  Yet, none of the statements at issue facially implicate Bercovich.  Nor do they provide any specific admission regarding the conduct charged.  Bercovich thus fails to meet his heavy burden of showing that these statements, if admitted, would cause prejudice of "such magnitude that the defendant [would be] denied a fair trial."  *United States v. Escalante*, 637 F.2d 1197, 1201 (1980).  In any event, "Rule 14 does not require severance even if

prejudice is shown; rather, it leaves the tailoring of the relief to be granted." *Zafiro*, 506 U.S. at 538-539. The "prejudicial effect of evidence relating to the guilt of codefendants is generally held to be neutralized by careful instruction by the trial judge." *Escalante*, 637 F.2d at 1201; *see also United States v. Fernandez*, 388 F.3d 1199, 1243 (2005) ("We have repeatedly held that a district court's careful and frequent limiting instructions to the jury, explaining how and against whom certain evidence may be considered, can reduce or eliminate any possibility of prejudice arising from a joint trial."). Bercovich articulates no reason why a limiting instruction would be particularly difficult for the jury to follow in this case.

## V. CONCLUSION

The benefits of having a joint trial, especially when codefendants are charged with conspiracy, outweigh any possible prejudice that Bercovich may face in being tried together with Webber. Additionally, any prejudice to Bercovich that may result from a joint trial can, and will, be mitigated by appropriate and diligent instructions to the jury. Bercovich's motion for severance is denied.

**IT IS SO ORDERED**.

Dated: September 28, 2016

_____
RICHARD SEEBORG
United States District Judge